ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

1. PUBLIC SERVICE COMMISSIONS—PUBLIC UTILITIES—RATE INCREASES
   —PARTIAL AND IMMEDIATE RELIEF—NOTICE—EMERGENCY—
   STATUTES.

   The Michigan Public Service Commission may in its discretion
   and upon written motion by a gas, telephone, or electric utility
   which is seeking a rate increase, make a finding and enter an
   order granting partial and immediate relief after first having
   given notice to the interested parties within the service area to
   be affected in the manner ordered by the commission; the
   commission is not required to find that the utility faces a
   financial emergency before an interim rate increase may be
   ordered (MCLA 460.6a).

2. PUBLIC SERVICE COMMISSIONS—PUBLIC UTILITIES—RATES—PRESUMP-
   TIONS—STATUTES.

   All rates fixed by the Michigan Public Service Commission are
   prima facie lawful and reasonable until finally found otherwise
   in an action brought pursuant to statute to set aside the rates
   (MCLA 462.25, 462.26).

3. PUBLIC SERVICE COMMISSIONS—RATE INCREASES—ADMINISTRATIVE
   LAW—ADMINISTRATIVE PROCEDURES ACT—FINDINGS OF FACT—
   EVIDENCE—STATUTES.

   An interim rate order by the Michigan Public Service Commis-
   sion does not violate a section of the Administrative Procedures
   Act relating to findings of fact by administrative agencies
   where the commission made definitive findings, although it did
   not recite each individual item of evidence upon which it relied
   to support its order (MCLA 24.285).

4. PUBLIC SERVICE COMMISSIONS—PUBLIC UTILITIES—RATE INCREASES
   —PARTIAL AND IMMEDIATE RELIEF—STAFF REPORT—EXPERT
   ANALYSIS—STATUTES.

   The statute which authorizes the Michigan Public Service Com-

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 64 Am Jur 2d, Public Utilities § 264 *et seq.*
[2] 64 Am Jur 2d, Public Utilities § 240 *et seq.*
[3, 4] 64 Am Jur 2d, Public Utilities § 273.

mission to grant partial and immediate relief to a utility seeking a rate increase does not prohibit the commission from acting before it has the full-blown expert-supported analysis which is presented by the commission's technical staff on the application for a permanent rate increase (MCLA 460.6a).

Appeal from Ingham, Marvin J. Salmon, J. Submitted April 9, 1975, at Detroit. (Docket Nos. 15299, 15300.) Decided August 11, 1975. Leave to appeal denied, 395 Mich 779.

Complaint by Frank J. Kelley, Attorney General, the City of Detroit, and Wayne County against the Michigan Public Service Commission challenging a commission order approving an interim rate increase requested by the intervening defendant, Michigan Consolidated Gas Company. Judgment for defendants. Plaintiffs appealed and the intervening defendant cross-appealed. Appeals dismissed for lack of jurisdiction. Plaintiffs appealed to the Supreme Court. Reversed and remanded to the Court of Appeals, 392 Mich 660 (1974). On remand, judgment for defendants affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Hugh B. Anderson* and *Roderick S. Coy,* Assistants Attorney General, *Michael M. Glusac,* Corporation Counsel, and *Robert Reese,* Assistant Corporation Counsel (City of Detroit), and *Aloysius J. Suchy,* Corporation Counsel, and *David R. Kaplan,* Assistant Corporation Counsel (Wayne County), for plaintiffs.

*Lawrence M. Glazer,* Assistant Attorney General, for defendant Michigan Public Service Commission.

*Gary L. Cowan, Dennis R. O'Connell* and *Mathe-*

*son, Bieneman, Veale & Parr,* for intervening defendant Michigan Consolidated Gas Company.

Before: R. B. BURNS, P. J. and M. J. KELLY and O'HARA,* JJ.

O'HARA, J. Michigan Consolidated Gas Company furnishes service to many Michigan customers.

The Michigan Public Service Commission (hereinafter PSC or the commission) is the legislatively created body regulating its intra-state operations including approving or disapproving rate increases.

Detroit is Michigan's largest city, and the county seat of Wayne County.

The case comes to us on appeal by the City of Detroit and Wayne County from the approval of the PSC of both a temporary and permanent rate increase.

For those not familiar with utility practice, we think it appropriate to mention the two-fold role played by the PSC in this and similar proceedings.

The commissioners, gubernatorial appointees, and their hearing examiners are adjudicators. The technical staff, utility financial return analysts, and other technical experts review rate increase petitions and take positions pro or contra the increase. "They" (usually referred to as "the staff") appear in the adjudicatory process in the same manner as the utility representatives. They introduce their own exhibits and qualify their own experts so as to be entitled to give opinion evidence. They may argue orally, if they choose. In this role they are completely independent of the adjudicating branch of the commission.

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

In this case they took a position opposing an interim increase and advocating a lesser permanent rate increase than the commission authorized.

This case was prepared originally for submission to the Supreme Court. It is on remand without any action by that Court to us. See *Attorney General v Michigan Public Service Commission,* 392 Mich 660; 221 NW2d 299 (1974).

As permitted by Supreme Court practice, part of our file is a "Joint Concise Statement of Proceedings and Facts". This document should not be confused with a stipulated statement of fact as that term is used in our practice. What it really amounts to is a stipulated concise statement of proceedings beginning with entry of an interim rate order entered on January 11, 1971,[1] a compacted recitation of the positions of the various parties, and a resume of the testimony each presented. There are no stipulated "facts" in the sense of uncontroverted and agreed fact findings.

The commission's order, and the circuit court proceedings, opinion and order, are contained in narrative form and are stipulated to be correct. It is helpful of course and we are grateful to have it. It is considerably more desirable than digging the information out of what at the time the interim increase was granted consisted of some 1,830 pages of transcript covering 13 hearing days.

The nub of this case is that the utility won in the sense that it was granted more than the staff and the intervening city and county believed it was entitled to, but less than it asked for.

In short the utility asked for a rate increase which would generate $14,217,518. The commis-

---

[1] An interim rate order issued on January 11, 1971 and a final opinion and order issued on March 25, 1971.

sion staff recommended an increase which would increase the utility's annual income by $6,218,350, plus some $1,111,000 from a rule change proposed by the staff. Of this recommendation, $1,000,000 was a sort of contingent increase dependent on the outcome of certain wage increases to utility employees. The increase was at the time under negotiation, and the staff's recommendation conditioned the $1,000,000 sum on the wage increases being "paid on some sort of retroactive basis".

Detroit and Wayne County claimed the utility's income was already excessive by $695,440 as related to a 7 percent overall rate of return. They also challenged expense allocation as between utility and non-utility operations and the return from the rental of storage facilities leased to an affiliate pipeline company.

It is beyond controversy and indeed within the stipulation hereinbefore described that competent testimony supported each of the stated positions.

The commission accepted no position *in toto.* It made findings of its own and issued two orders based thereon. The first granted the utility an interim rate order designed to increase the utility's revenue by $9,200,000. The second granted by final order a rate increase to generate additional revenue of $2,739,000, for a total rate increase of $11,939,000.

It should be kept in mind that this latter final order was not appealed to the Supreme Court, by any party to this proceeding. It therefore is not before us on remand.

Detroit and Wayne County, through the Attorney General, appeal of right from an order of the circuit court affirming the commission's order granting a "partial and immediate" rate increase and dismissing plaintiffs' action on the merits. By

motion for summary judgment in the court below the defendant commission and defendant utility raised the issue of whether in the event *the interim* order was held invalid rebates to customers could be ordered. This issue was properly preserved and argued to us on oral presentation. Obviously if we hold the interim rate order legal, this issue becomes moot.

We would be extremely remiss if we did not mention that we were favored by a 23 printed page opinion by the learned and experienced trial judge. He went through the myriad issues with a fine tooth comb. He then reduced them to four clearly stated main issues. We quote:

"First, whether there is any relief which can be granted to the plaintiffs in the event of a decision in their favor;

"Second, whether the statute, MCLA 460.6a[2] which authorizes interim rate relief violates the due process or equal protection clauses of the Constitution;

"Third, whether the commission properly construed and applied MCLA 460.6a to the present case; and

"Fourth, whether the commission complied with the Administrative Procedures Act by supporting its findings of fact and conclusions of law in the interim order."

From the judgment of the trial court, based upon its analysis and opinion, the Attorney General assigns the following errors:

"I. Did the Michigan Public Service Commission act unlawfully, and violate the applicable statute, in granting to a public utility company a 'partial and immediate' rate increase when it was clear that the company faced no financial emergency?

"II. Did the commission's interim rate order, in fail-

---

[2] MCLA 460.6a; MSA 22.13(6a).

ing to contain findings of fact with respect to Michigan Consolidated's rate base, revenues, expenses, income, required rate of return, or financial condition or needs, and in failing to resolve any of the disputed fact and opinion issues raised by the conflicting testimony of expert witnesses, violate Section 85 of the Administrative Procedures Act of 1969 [MCLA 24.285; MSA 3.560(185)]?

"III. Did the commission err either in granting 'immediate and partial relief' to Michigan Consolidated without benefit of the investigation and report of its technical staff on the need for such 'relief', or in other respects, contrary to the mandate of the statute?"[3]

The Attorney General argues that it has been commission policy in but a couple of isolated cases over a period of many years to find that an "emergency" exists before a partial and immediate rate increase can be granted. We are obliged to inquire what *legal* effect does this have? *This* commission is composed of appointees who are free and indeed obliged to exercise their best judgment within the limits of the legislative grant of authority to it. The "ninety-nine year" rule, that "it's always been done that way" does not control. The issue simply is: does what they did fall within the statutory grant? The statute itself answers the question.

"[T]he commission * * * may in its discretion and upon written motion by such utility make a finding and enter an order granting *partial* and *immediate* relief, after first having given notice to the interested parties within the service area to be affected in the manner ordered by the commission, * * * ." MCLA 460.6a; MSA 22.13(6a). (Emphasis supplied.)

We find no suggestion that any of the above requirements were omitted or contravened. When

---

[3] MCLA 460.6a; MSA 22.13(6a).

we add to this the proviso in section 25 of the act, MCLA 462.25; MSA 22.44, that all rates fixed by the commission are "prima facie, lawful and reasonable until finally found otherwise in an action brought for the purpose pursuant to the provisions of section 26 of this act", we could hardly do other than hold the assignment of error without merit. We do so hold.

As to assignment number 2 that the interim order violated section 85 of the Administrative Procedures Act of 1969, MCLA 24.285; MSA 3.560(185), it simply does not accord with the facts of record. Though the commission did not recite by needless rote each individual item of evidence upon which it relied to support its interim order for partial and immediate relief, it certainly did make definitive findings.

We quote two excerpts, not necessarily *seriatim,* from the interim order which alone would support its issuance under the statute:

"The distinction in the present case exists by virtue of the fact that Consolidated derives 90% or more of its revenues from the distribution and sale of natural gas, and the greatest percentage of these revenues are earned in the winter heating season. We are now in the month of January 1971. A final rate order in this case, finding a similar revenue deficiency, in mid-March of 1971 leaves Consolidated with an inability to recover a larger percentage of the deficiency until the following heating season of 1971-72. Also, a revenue deficiency not recovered in part during the current heating season is lost forever to the applicant utility."

\* \* \*

"According to the staff presentation, Consolidated was experiencing a revenue deficiency of $6,218,000 based on an adjusted test year ending August 31, 1970 after giving effect to the staff proposal to revise Consolidated's Rule 15. Adding to this amount additional in-

creases in the cost of gas and the effect of revising Rule 15 results in a revenue deficiency of approximately $9,200,000 without giving any consideration to a recent wage increase and a number of other proposed adjustments to Consolidated's test year experience which remain disputed on the record."

We hold assignment number 2 to be without record support and unmeritorious.

The third and final assignment of error asserts error by the commission in acting "without benefit of the investigation and report of its technical staff" in contravention of the statute.

It seems to us manifest that the proviso in the statute authorizing partial and immediate relief upon fulfillment of certain conditions could not possibly be utilized if the statute were construed to mean that before acting the commission had to have before it the full-blown expert-supported analysis which is presented by the staff on an application for a permanent rate increase.

Such a construction would render nugatory the authority of the commission to act before the effect of the events which the utility seeks to avert had impaired its ability to serve the public. It would be foolhardy navigation to see whitecaps breaking over a reef which lies on a given course, and require that course to be maintained without an in-depth study and report on the advisability of changing it.

This was the position of the trial judge and we agree with it:

"The commission found that there was 'substantial evidence to indicate that Consolidated is experiencing a revenue deficiency of approximately $9,200,000' and that an annual revenue increase in that amount was 'reasonable'. The evidence relied on in support of this conclusion was presented to the commission in the

company case and the staff case at prior hearings. In its interim rate order the commission clearly indicated the evidence it was relying on * * * ".

It is perhaps worthy of note that the four main issues which the trial judge considered to be controlling and the assignments of error relied upon by appellants do not coincide. The issues raised were appellants' choice. We have written to each of them.

As stated and argued we find them unsustained. We find no error. We note, perhaps needlessly, what is apparent from the record, that the amount of the grant of partial and immediate relief was much less than the sum of the amounts awarded the utility in the permanent order which was not appealed by anyone.

The question of who orders a rebate is moot.

The trial judge is affirmed in all respects. No costs, a public question.